**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DOLORES BAROT,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 13-cv-451 (ABJ) |
| **THE EMBASSY OF THE** | ) | |
| **REPUBLIC OF ZAMBIA,** | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE EMBASSY**
**OF THE REPUBLIC OF ZAMBIA'S MOTION TO DISMISS**
**AND MOTION TO STRIKE**

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.  Barot's Complaint Should Be Dismissed for Failure to Serve Properly
    with Process and for Lack of Personal Jurisdiction . . . . . . . . . . . . . . . . . . . 11

        1.  The Embassy Is To Be Treated As the "Foreign State," Not An
        Agency or Instrumentality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.  As A Foreign State, the Embassy Should Have Been – But Was
        Not – Served With Process Pursuant to 28 U.S.C. §1608(a) . . . . . . 13

    B.  Barot's Complaint Should Be Dismissed For Lack of Subject Matter
    Jurisdiction Under Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.  The FSIA Provides the Sole Basis For Jurisdiction Over a
        Foreign State . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        2.  Barot Fails to Allege a Short and Plaint Statement of
        Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        3.  The EEOC Lacks Authority To Determine Whether A Foreign
        State Is Immune and Its Findings and Conclusions Are Not
        Binding Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        4.  Barot's Claims Are Not "Based Upon" Commercial Activity . . . . 17

    C.  Barot's Complaint Fails to State a Claim Upon Which Relief May Be
    Granted And Accordingly Should Be Dismissed Under Rule 12(b)(6) . . . 21

           1.  Barot's Claims Should Be Dismissed As Untimely . . . . . . 22

               a.  Barot's Title VII and ADEA Claims Were Filed
               In This Court Outside of the 90-Day Time Limit . . 22

               b.  Barot's EPA Claim Is Barred By The Two-Year
               Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . 24

2.     Barot Fails to Allege that the Embassy Is A Covered
Employer Under Title VII and the ADEA . . . . . . . . . . . . . . 25

3.     Barot Fails to Allege That She Exhausted Her
Administrative Remedies with Regard to Her Title VII
and ADEA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

D.    Barot's Jury Demand and Request for Punitive Damages Should Be
Stricken . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek,*
     600 F.3d 171 (2d Cir. 2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Arango v. Guzman Travel Advisors Corp.,*
     621 F.2d 1371 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Arbaugh v. Y & H Corp.,*
     546 U.S. 500 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Argentine Rep. v. Amerada Hess Shipping Corp.,*
     488 U.S. 428 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 15

*Arriba, Ltd. v. Petroleos Mexicanos,*
     962 F.2d 528 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 22

*Bell Atlantic Corp. v. Twombly,*
     550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Berry v. Coastal Int'l Sec., Inc.,*
     2013 U.S. Dist. LEXIS 129563 (D.D.C. Sept. 11, 2013)  . . . . . . . . . . . . . . . . . . . 22, 23

*Burkes v. Holder,*
     2013 U.S. Dist. LEXIS 98181 (D.D.C. July 15, 2013) . . . . . . . . . . . . . . . . . . . . . . 26

*Butters v. Vance Int'l,*
     225 F.3d 462 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Crist v. Rep. of Turkey,*
     1997 U.S. App. LEXIS 749 (D.C. Cir. 1997)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Democratic Rep. of Congo v. FG Hemisphere Assocs.,*
     508 F.3d 1062 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Dyson v. D.C.,*
     808 F. Supp. 2d 84 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 25

*El-Hadad v. U.A.E.*,
    496 F.3d 658 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Ellenbogen v. The Canadian Embassy*,
    2005 U.S. Dist. LEXIS 35262 (D.D.C. Nov. 9, 2005) . . . . . . . . . . . . . . . . . . . . . 12, 14

*FG Hemisphere Assoc., LLC v. Democratic Rep. of Congo*,
    447 F.3d 835 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Firestone v. Firestone*,
    76 F.3d 1205 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gates v. Syrian Arab Rep.*,
    646 F.3d 1 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Great Socialist People's Libyan Arab Jamahiriya v. Miski*,
    683 F. Supp. 2d 1 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*GSS Group Ltd. v. Nat'l Port Auth.*,
    680 F.3d 805 (D.C. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hawley v. Blackboard, Inc.*,
    2005 U.S. Dist. LEXIS 3865 (D.D.C. Mar. 3, 2005) . . . . . . . . . . . . . . . . . . . . . . . 24

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Rep. of Venezuela*,
    2013 U.S. Dist. LEXIS 134949 (D.D.C. Sept. 20, 2013) . . . . . . . . . . . . . . . . . . . 15, 16

*Hijazi v. Perm. Mission of Saudi Arabia to the U.N.*,
    689 F. Supp. 2d 669 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Hinton v. Corrections Corp. of Am.*,
    624 F. Supp. 2d 45 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Hodge v. United Airlines*,
    821 F. Supp. 2d 180 (D.D.C. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*International Road Fed'n. v. Embassy of Democratic Rep. of Congo*,
    131 F. Supp. 2d 248 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Jin v. Ministry of State Sec.*,
    557 F. Supp. 2d 131 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

*Johnson v. Interstate Mgmt. Co. LLC*,
    2013 U.S. Dist. LEXIS 121414 (D.D.C. Aug. 27, 2013)  . . . . . . . . . . . . . . . . . . . . . 25, 26

*Kirkham v. Societe Air Fr.*,
    429 F.3d 288 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kitterlin v. N. Am. Canoe Tours, Inc.*,
    2013 U.S. Dist. LEXIS 83350 (M.D. Fla. June 15, 2012)  . . . . . . . . . . . . . . . . . . . 25

*Koch v. White*,
    2013 U.S. Dist. LEXIS 128769 (D.D.C. Sept. 10, 2013). . . . . . . . . . . . . . . . . . . . . . . 17, 23, 24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mack v. WP Co., LLC*,
    923 F. Supp. 2d 294 (D.D.C. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Odhiambo v. Rep. of Kenya*,
    930 F. Supp. 2d 17, 2013 U.S. Dist. LEXIS 34538 (D.D.C. Mar. 13, 2013). . . . . . . 15, 17, 19

*Owens v. Rep. of the Sudan*,
    531 F.3d 884 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Park v. Howard Univ.*,
    71 F.3d 904 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Peart v. Latham & Watkins LLP*,
    2013 U.S. Dist. LEXIS 152115 (D.D.C. Oct. 23, 2013)  . . . . . . . . . . . . . . . . . . . . . 21

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Roeder v. Islamic Rep. of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ruggiero v. Compania Peruana de Vapores*,
    639 F.2d 872 (2d Cir. 1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Sabbagh v. U.A.E.*,
    2002 U.S. Dist. LEXIS 26380 (D.D.C. Dec. 10, 2002) . . . . . . . . . . . . . . . . . . . . . . 12

*Sabbithi v. Waleed*,

623 F. Supp. 2d 93 (D.D.C. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Saudi Arabia v. Nelson,*
507 U.S. 349 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 17, 18, 19, 20, 21

*Scott v. Johanns,*
409 F.3d 466 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shager v. Upjohn Co.,*
913 F.2d 398 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Teemac v. Henderson,*
298 F.3d 452 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Transaero v. La Fuerza Aerea Boliviana,*
30 F.3d 148 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12, 13, 14

*Underwood v. United Rep. of Tanzania,*
1995 U.S. Dist. LEXIS 1333 (D.D.C. Jan. 27, 1995) . . . . . . . . . . . . . . . . . . . . . . . 13, 14

## RULES

Federal Rule of Civil Procedure 8(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13, 15, 17

Federal Rule of Civil Procedure 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Federal Rule of Civil Procedure 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATUTES

Age Discrimination in Employment Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Civil Rights Act, Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Equal Pay Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Foreign Sovereign Immunities Act,
28 U.S.C. §§ 1330, 1602 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## I.     Introduction

This case involves allegations of employment discrimination by Ms. Dolores Barot ("Barot"), a former secretary of the Embassy of the Republic of Zambia ("the Embassy"). We move to dismiss Barot's Complaint (Dkt. 1) for several reasons.

*First*, we move to dismiss for improper service of process and lack of personal jurisdiction under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2). Because the Embassy is considered one and the same as the Republic of Zambia itself, Barot was required to, but did not, comply strictly with the procedures governing service on a "foreign state" as set out in the Foreign Sovereign Immunities Act ("FSIA") 28 U.S.C. §1608(a).

*Second*, even if Barot were to effectuate service on the Embassy, the Complaint should be dismissed with prejudice under Rule 12(b)(1) because this Court lacks FSIA subject-matter jurisdiction over this action. Barot's lawsuit for intentional torts is not "based upon" any commercial activity of the Embassy. 28 U.S.C. §1605(a)(2).

*Third*, Barot's Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) because of applicable time limits and statutes of limitations. Her lawsuit for violations of Title VII of the Civil Rights Act ("Title VII") and the Age Discrimination in Employment Act ("ADEA") is untimely because the Notice of Right to Sue was issued and mailed on December 21, 2012, yet she filed her lawsuit 109 days later, on April 9, 2013. Further, Barot's Equal Pay Act ("EPA") claim for conduct that allegedly took place in 2009 is barred by the applicable two-year statute of limitations.

*Fourth*, although we believe Barot's Complaint must be dismissed with prejudice for the reasons stated just above, for completeness, we also move to dismiss pursuant to Rule 12(b)(6)

for failure to state a claim upon which relief may be granted because (a) Barot failed to allege that the Embassy is a covered employer under Title VII and the ADEA; and (b) Barot failed to allege timely exhaustion of her administrative remedies for her Title VII and ADEA claims.

*Fifth*, we move to strike Barot's jury demand and request for punitive damages because she is entitled to neither under the FSIA.

## II.    Facts

According to the Complaint, Barot, a resident of Washington, D.C., is a Filipina female who, at the time of the alleged conduct, was 63 years old. (Dkt. 1 at 3). From January 1998 until September 10, 2009,[1] she served as secretary at the Embassy. (*Id.* at 2-3). In 2002, she also was assigned additional accounting duties. (*Id.*). On September 8, 2009, she requested a raise. (*Id.* at 3). Two days later, on September 10, 2009, she was "placed. . .on 'Indefinite Administrative Leave', entitling her to only 50 percent of her salary." (*Id.*). On the same day, September 10, the Embassy ordered her to "pack her possessions and leave the premises." (*Id.*). Embassy "officials" escorted her off the premises. (*Id.*). The Embassy apparently terminated her employment, although no termination date is alleged. (*Id.*). Thereafter, the Embassy allegedly "hired a much younger male who the Defendant knew had inferior skills and work experience than the Plaintiff." (*Id.*).

We attach hereto, as Exhibit A, a true and correct copy of the Notice of Right to Sue, to which Barot refers in her Complaint. Because there is a Notice of Right to Sue, it appears that

---

[1]On page 2 of her Complaint, Barot alleges that she was "employed" until November 2009. (Dkt. 1 at 2). However, she alleges on page 3 that she was escorted off the premises and required to return her office keys on September 10, 2009. (Dkt. 1 at 3). The fair inference from the Complaint then is that, as of September 10, 2009, she no longer performed secretarial tasks for the Embassy.

Barot filed, on some unknown date, a Notice of Charge with the Equal Employment Opportunity Commission ("EEOC"), which appears to have been assigned No. 570-2010-01532. (Ex. A).

On December 21, 2012, the EEOC issued and mailed to Barot the Notice of Right to Sue. (*Id.*). One-hundred-and-nine days later, on April 9, 2013, Barot filed her Complaint in this Court. In that Complaint, Barot seems to allege violations of Title VII, the ADEA, and the EPA. She sets forth no causes of action, however, so it is difficult to discern the precise nature of her claims. For purposes of this motion, we construe her allegations as seeking relief for discrimination based on age, sex, and national origin as well as failure to pay her equally for equal work.[2]

## III.    Procedural History

After an attempt to serve the Complaint and summons on the Embassy by the U.S. Marshals Service (Dkt. 3), this Court ordered Barot, on August 16, 2013, to file a notice by August 29, 2013, with the "full name and mailing address of the head of the Ministry of Foreign Affairs for the Republic of Zambia so that the Court can direct the Clerk of Court and the U.S. Marshals Service to execute service in accordance" with the FSIA, specifically 28 U.S.C. §1608(a), (Dkt. 4), which governs service of process on foreign states and their political subdivisions.

Barot complied with the Court's Order, though not until September 3, 2013. (Dkt. 5).

On September 4, 2013, instead of directing the Clerk of Court to execute service in accordance with §1608(a), this Court ordered the Embassy to be served pursuant to FSIA

---

[2]To the extent Barot contends in her response brief to allege other claims, we reserve the right to dispute them on reply.

§1608(b), which governs service of foreign state agencies and instrumentalities. (Dkt. 6).

Specifically, the Court directed the Clerk of Court to deliver two copies of the summons and

Complaint via "a form of mail requiring a signed receipt," one addressed to the "Ambassador of

the Embassy," and the other addressed to the Embassy itself. (Dkt. 6 at 2-3). The Court reasoned

that, where service cannot be made pursuant to certain other statutory methods, "service in the

courts of the United States shall be made upon an agency or instrumentality of a foreign state"

by delivering the summons and complaint via "'mail requiring a signed receipt'. . .so long as that

method of service is reasonably calculated to give actual notice to the defendant." (Dkt. 6 at 2,

quoting §1608(b)). Service by certified mail, found the Court, is "reasonably calculated to give

actual notice" to the Embassy. (*Id.*).

## IV.    Argument

### A.    Barot's Complaint Should Be Dismissed for Failure to Serve Properly with Process and for Lack of Personal Jurisdiction

The FSIA provides the sole basis for exercising jurisdiction over a foreign sovereign in

U.S. court. *See Argentine Rep. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).

Section 1608 of the FSIA governs service of process on foreign states. Section 1608(a) sets forth

the rules governing service of process on "a foreign state or political subdivision of a foreign

state" whereas §1608(b) sets forth the rules for serving process on "an agency or instrumentality

of a foreign state." "[U]nder the FSIA, subject matter jurisdiction plus service of process equals

personal jurisdiction." *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 811 (D.C. Cir. 2012)

(internal quotations and citations omitted); *Transaero v. La Fuerza Aerea Boliviana*, 30 F.3d

148, 151 (D.C. Cir. 1994) (same). *See also* 28 U.S.C. §1330(b).

### 1.    The Embassy Is To Be Treated As the "Foreign State," Not An

### Agency or Instrumentality

Based on the weight of authority, the Embassy is not – contrary to this Court's Order of September 4, 2013 (Dkt. 6)[3] – an agency or instrumentality of the Republic of Zambia but in fact is considered one and the same as Zambia itself. In the D.C. Circuit, if the "core functions" of the entity in question are "predominantly governmental," then the entity is the state itself and not "an agency or instrumentality" of the state. *Transaero*, 30 F.3d at 151. *See also id.* at 153 (finding armed forces to be one and the same as "foreign state" itself). Put differently, if the defendant is "so closely bound up with the structure of the state" and its powers are "necessary concomitants of sovereignty," *id.* (internal quotations and citations omitted), then it is to be treated as the foreign state itself and not as an agency or instrumentality.

Without question, an embassy's core functions – conducting foreign relations – are predominantly governmental. *See Roeder v. Islamic Rep. of Iran*, 333 F.3d 228, 234-35 (D.C. Cir. 2003) (finding that Iran's Ministry of Foreign Affairs "must be treated as the state of Iran itself rather than as its agent. The conduct of foreign affairs is an important and 'indispensable' governmental function."). For this reason, courts in this Circuit consider an embassy to be as one and the same as the "foreign state" itself, including for purposes of service of process. *See Ellenbogen v. The Canadian Embassy*, 2005 U.S. Dist. LEXIS 35262, at *3-4 (D.D.C. Nov. 9, 2005) ("it is well-settled that an embassy is a 'foreign state' covered by §1608(a), not an 'agency or instrumentality' thereof"); *Sabbagh v. U.A.E.*, 2002 U.S. Dist. LEXIS 26380, at *3-4 and n.1 (D.D.C. Dec. 10, 2002) (same); *International Road Fed'n v. Embassy of Democratic Rep. of*

---

[3]Accordingly, we also are filing, contemporaneously herewith, a motion for reconsideration of this Court's Order of September 4, 2013.

*Congo*, 131 F. Supp. 2d 248, 250 and 251 (D.D.C. 2001) (same); *Underwood v. United Rep. of Tanzania*, 1995 U.S. Dist. LEXIS 1333, at *3-4 (D.D.C. Jan. 27, 1995) (same).

## 2. As A Foreign State, the Embassy Should Have Been – But Was Not – Served With Process Pursuant to 28 U.S.C. §1608(a)

Because the Embassy should be treated as the foreign state itself, it should have been

served in accordance with §1608(a), not §1608(b). Under *Transaero*, the terms of §1608(a) must

be complied with strictly. 30 F.3d at 154 ("strict adherence to the terms of 1608(a) is required.").

*See also* 22 C.F.R. 93.2 (setting forth requirements for service of process under §1608(a)). Strict

compliance means that the methods set forth in §1608(a) must be attempted in descending order;

each method is "available only if the previously enumerated options are in some way

foreclosed." *Democratic Rep. of Congo v. FG Hemisphere Assocs.*, 508 F.3d 1062, 1063 (D.C.

Cir. 2007). In other words, the list of four methods set forth in §1608(a) is not one from which a

plaintiff may pick and choose. Further, substantial compliance and actual notice are not

sufficient. *See Transaero*, 30 F.3d at 153-54; *Sabbithi v. Waleed*, 623 F. Supp. 2d 93, 98 (D.D.C.

2009).

Section 1608(a) permits delivery (1) by a special arrangement, if it exists, (2) by

international convention, if applicable, (3) through the ministry of foreign affairs of the foreign

state, or (4) through diplomatic channels. In this case, as mentioned above, the Clerk of Court

delivered copies of the summons and Complaint, via certified mail, on the Ambassador and

Embassy. Service on the Ambassador and/or the Embassy do not, however, comport with

§1608(a). Indeed, there is no showing that the Embassy had a special arrangement with Barot to

be served in this manner under §1608(a)(1), and service on the Ambassador and Embassy do not

otherwise comply with §1608(a)(2) - (4). *See Transaero*, 30 F.3d at 153-154 (finding that service

upon the "Bolivian Ambassador and Consul General in Washington" failed to comply strictly

with §1608(a) and ordering that the proceedings be dismissed); *Ellenbogen*, 2005 U.S. Dist.

LEXIS 35262, at *3, 6 (in case against the Canadian Embassy, service upon the Embassy itself

failed to comply with §1608(a)); *Underwood*, 1995 U.S. Dist. LEXIS 1333, at *2, 6 (in case

against *inter alia* the Tanzanian Embassy, leaving "process at the Embassy" with a receptionist

failed to comply with  §1608(a)).

Normally, where service of process has not been effectuated properly, a court will

dismiss a complaint without prejudice. *See, e.g., Sabbithi*, 623 F. Supp. 2d at 98, *Ellenbogen*,

2005 U.S. Dist. LEXIS 35262, at *9. In this case, however, we ask the Court to dismiss Barot's

Complaint with prejudice because, even assuming proper service, the Court lacks subject-matter

jurisdiction. *See Crist v. Rep. of Turkey*, 1997 U.S. App. LEXIS 749, at *9 (D.C. Cir. 1997)

(remanding for district court to first determine whether it had subject-matter jurisdiction before

ruling on statute of limitations arguments); *Arriba, Ltd. v. Petroleos Mexicanos*, 962 F.2d 528,

530 and 539 (5th Cir. 1992) (finding foreign sovereign instrumentality was entitled to sovereign

immunity and reversing district court decision with instructions to dismiss with prejudice).

### B.    Barot's Complaint Should Be Dismissed For Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

### 1.    The FSIA Provides the Sole Basis For Jurisdiction Over a Foreign State

Plaintiff alleges that this Court "has subject matter jurisdiction over law suits involving

violations of federal employment law." (Dkt. 1 at 2). While this may be true as a general matter,

it is not true *vis a vis* a foreign state. As explained *supra*, the FSIA provides the *sole* basis for

exercising jurisdiction over a foreign sovereign in U.S. court. *See Amerada Hess*, 488 U.S. at

434; *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 2013 U.S. Dist. LEXIS 34538, at *12

(D.D.C. Mar. 13, 2013). Subject matter jurisdiction in this case thus rises or falls under the FSIA.

### 2.  Barot Fails to Allege a Short and Plain Statement of Jurisdiction

Under the FSIA, a foreign state is presumptively immune from the jurisdiction of U.S. courts. *See Saudi Arabia v. Nelson* , 507 U.S. 349, 355 (1993). *See also* 28 U.S.C. §1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."). Where, as here, it is established that the defendant is a foreign state, the plaintiff bears the burden of producing sufficient evidence – or, in this context, alleging sufficient facts – to show that the conduct at issue falls within one of the FSIA's statutory exceptions. *See FG Hemisphere Assocs., LLC v. Democratic Rep. of Congo*, 447 F.3d 835, 842-43 (D.C. Cir. 2006). *See also Odhiambo,* 930 F. Supp. 2d 17, 2013 U.S. Dist. LEXIS 34538, at \*10 (plaintiff bears burden of establishing jurisdiction, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Moreover, Federal Rule of Civil Procedure 8(a)(1) requires a "short and plain statement" of the basis for jurisdiction. In an FSIA case, as with other cases, this short and plain statement must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-563 (2007) (discussing plausibility standard); *Nelson*, 507 U.S. at 356-363 (discussing FSIA pleading standard pre-*Iqbal* and pre-*Twombly*); *Owens v. Rep. of the Sudan*, 531 F.3d 884, 894-895 (D.C. Cir. 2008) (in facial attack on jurisdictional allegations, holding that the "standard for assessing the sufficiency of jurisdictional pleadings under the FSIA is similar to that of Rule 12(b)(6)" and citing *Twombly*); *Helmerich & Payne Int'l Drilling Co. v.*

*Bolivarian Rep. of Venezuela*, 2013 U.S. Dist. LEXIS 134949, *33-34 (D.D.C. Sept. 20, 2013) (in facial challenge to jurisdiction, Rule 12(b)(6) standard under *Iqbal* and *Twombly* applies).

In this case, Barot alleges conclusorily that the Embassy is "not entitled to sovereign immunity because the wrongs it has engaged in fall under commercial activity, as concluded by the EEOC, and as such fall under the commercial activity exception of 28 U.S.C. §1605(a)(2)." (Dkt. 1 at 2). This sole allegation regarding the FSIA fails to meet the relevant pleading standards. Just citing to an FSIA subsection and adding a conclusory allegation that the "wrongs" the Embassy "engaged in fall under commercial activity" under §1605(a)(2) wholly fails to satisfy Barot's pleading obligation under the FSIA and *Iqbal*. Barot does not identify which of the three clauses in §1605(a)(2) applies, and why, nor does she allege factual content to show that the Embassy engaged in commercial activity when it allegedly discriminated against her.

### 3.    The EEOC Lacks Authority To Determine Whether A Foreign State Is Immune and Its Findings and Conclusions Are Not Binding Here

Instead of pleading factual content showing that the commercial activity exception applies, Barot seems to rely exclusively on the EEOC's conclusions. (Dkt. 1 at 2, alleging that the EEOC "concluded" that the Embassy was engaged in commercial activity). Under the FSIA, however, the EEOC, an administrative agency of the Executive Branch, has no jurisdiction to make determinations regarding foreign sovereign immunity. Such determinations fall within the province of the Judicial Branch. *See* 28 U.S.C. §1602 ("Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States"). *See also Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (FSIA "transfers primary responsibility for immunity determinations from the Executive to the Judicial Branch.").

Further, even assuming the EEOC had authority to make a definitive immunity determination, the EEOC's findings and conclusions are not binding on this Court. *See Scott v. Johanns*, 409 F.3d 466, 469-470 (D.C. Cir. 2005); *Hodge v. United Airlines*, 821 F. Supp. 2d 180, 197 (D.D.C. 2011). *See also Teemac v. Henderson*, 298 F.3d 452, 455 (5th Cir. 2002) (*de novo* review should be conducted regarding EEO determination of equitable tolling). Barot's Complaint thus fails to allege a short and plain statement of subject-matter jurisdiction and should be dismissed on that basis.

**4.      Barot's Claims Are Not "Based Upon" Commercial Activity**

Although Barot failed to plead which clause of §1605(a)(2) applies, and otherwise fails to plead satisfactory factual content for purposes of Rule 8(a)(1), we wish to head off an amended pleading and therefore demonstrate why Barot has not met the clause of §1605(a)(2) which we believe is most applicable – the first clause.[4]

The first clause of §1605(a)(2) provides, "A foreign state shall not be immune. . .in any case. . .in which the action is based upon a commercial activity carried on in the United States by the foreign state." A foreign nation engages in commercial activity "where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'" *Nelson*, 507 U.S. at 360 (internal citation omitted).

The starting point in a purported commercial activity case is to determine the particular conduct of the foreign state on which the lawsuit is "based." *See Odhiambo*, 930 F. Supp. 2d 17, 2013 U.S. Dist. LEXIS 34538, at *21. *Nelson* clarified that the phrase "based upon is read most

---

[4]We do not address clauses two and three of §1605(a)(2) because they do not appear to apply. Should Barot take a different position in her response to this motion, we reserve our right to address her arguments on reply.

naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief

under his theory of the case." 507 U.S. at 357. *See also Kirkham v. Societe Air Fr.*, 429 F.3d 288,

292 (D.C. Cir. 2005) (holding that "elements" means each fact necessary to establish a claim).

In this case, Barot is suing for discrimination, which is a tort. *Shager v. Upjohn Co.,* 913

F.2d 398, 405 (7th Cir. 1990) ("Discrimination is an intentional tort."). She is not suing, for

example, for breach of a commercial contract. *Cf. El-Hadad v. U.A.E.*, 496 F.3d 658, 663 (D.C.

Cir. 2007) (finding §1605(a)(2) jurisdiction existed over suit for "breach of his employment

contract and defamation in connection with that breach" brought by accountant for the U.A.E.

Embassy).

Although in breach of contract cases, the D.C. Circuit focuses on the "employment

relationship. . .as a whole," *id.* at 664 n.1, the mere fact of employment does not automatically

render a foreign state subject to the commercial activity exception for all causes of action. *See id.*

at 663 (holding that the commercial activity exception applied not simply because plaintiff was

an employee of an Embassy but because his "action is 'based upon' breach of his employment

contract and defamation in connection with that breach."); *Jin v. Ministry of State Sec.*, 557 F.

Supp. 2d 131, 141 (D.D.C. 2008) (refusing to "render the mere act of 'hiring' of non-civil

servants a commercial activity" without considering full context). Indeed, if mere employment

were sufficient, then the exception would "swallow the rule of presumptive sovereign immunity

codified in the FSIA." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek*, 600 F.3d 171,

178 (2d Cir. 2010). *See also id.* at 179 (refusing to find commercial activity "solely on the basis

of an employment relationship.").

Accordingly, the Supreme Court and other courts have held that lawsuits, even by

commercial employees, alleging tortious activity generally do not fall within the first clause of

the commercial activity exception. *Cf. El-Hadad*, 496 F.3d at 663 (commercial activity exception

applied in case involving commercial employee alleging breach of contract and defamation that

arose out of contract breach). In *Nelson*, for example, the Supreme Court held that a tort action

brought by a commercial employee did *not* fall within the first clause of the commercial activity

exception. Saudi Arabia had hired Nelson in the United States to serve as an engineer at a state

hospital in Saudi Arabia. Nelson allegedly discovered some safety issues at the hospital, and

when he reported and complained about them, the Saudi Government allegedly tortured and

detained him. Nelson then sued, arguing that his hiring in the United States constituted

commercial activity and hence subject-matter jurisdiction. The Supreme Court disagreed. The

Court explained that the first clause of §1605(a)(2), requiring a lawsuit to be "based upon a

commercial activity carried on in the United States by the foreign state," "calls for something

more than a mere connection with, or relation to, a commercial activity." 507 U.S. at 358.

Nelson's lawsuit was not "based upon" the hiring, even if the suit had a connection with the

commercial act of hiring an employee. Rather, his lawsuit was based upon the alleged intentional

torts (torture and detention) by the Saudi Government. Because only a sovereign – and not a

private individual – can abuse police power, the activity at issue was not "commercial," and

Saudi Arabia was immune from suit. *Id.* at 361-363. *See also Odhiambo*, 930 F. Supp. 2d 17,

2013 U.S. Dist. LEXIS 34538, at *22-23 ("Since the plaintiffs in *Nelson* did not allege a breach

of contract, the fact that the defendants recruited the plaintiff in the United States had no bearing

upon the plaintiff's entitlement to damages in that case."); *Jin*, 557 F. Supp. 2d at 141-142

(finding that plaintiffs' claims regarding China's employment of "thugs" to undertake violence

sounded in tort, hence the commercial activity exception did not apply).

Also, in *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir. 1980), a case cited with approval by *Nelson*, 507 U.S. at 361, the Fifth Circuit refused to hear the tort aspects of a lawsuit in which there was a contractual relationship. Arango brought claims for breach of contract, false imprisonment, and battery when the national airline of the Dominican Republic involuntarily re-routed the Arango family back to the United States because they were on a list of "undesirable aliens." 621 F.2d at 1373. The court held that, even though the airline "unquestionably" was engaged in a commercial enterprise, the commercial activity exception did not apply to the false imprisonment and battery claims. Indeed, the tortious involuntary re-routing was the result of sovereign decisions made by Dominican immigration officials based on Dominican law. *Id.* at 1379. By contrast, the commercial activity exception *did* apply to the Arangos' breach of contract claims, which "arose directly from" the marketing and execution of the commercial airline tickets. *Id.* at 1379-80.

Similarly, in *Butters v. Vance International*, 225 F.3d 462 (4th Cir. 2000), the Fourth Circuit held that Vance International, a security firm, was entitled to derivative immunity in a gender discrimination case because the suit was not based upon any commercial act committed by the foreign state. Saudi Arabia had hired Vance to provide security to a member of the royal family while she was in the United States. Vance assigned Butters, along with several Saudi male military officers, to assist with security on a temporary basis. When Vance recommended that Butters serve a permanent rotation, Saudi Arabia refused because of the political ramifications for the royal family. Specifically, under Islamic law, it would be inappropriate for the male officers to spend long periods of time in a command post with a woman. The Fourth

Circuit held that, because Butters' lawsuit was "based upon" Saudi Arabia's political, religious, cultural decision regarding security, it could not proceed in U.S. court. "[A] foreign sovereign's decision as to how best to secure the safety of its leaders. . .is quintessentially an act 'peculiar to sovereigns[,]" *id.* at 465 (citing and quoting *Nelson*). "We. . .decline to require the Saudi government to justify to us the arrangements it believes are best suited to ensure the safety of its royal family." *Id.*

So here. Like the plaintiffs in *Nelson*, *Arango*, and *Butters*, Barot does not allege that her tort lawsuit is based upon the commercial activity of the Embassy. Although she was an administrative employee of the Employee and in that sense may be "commercial," her claim is not based upon any breach of the contractual relationship, but upon various forms of discretionary tortious acts which, without further allegations showing why those torts were commercial, are presumed to be sovereign. Accordingly, Barot's Complaint should be dismissed for lack of subject-matter jurisdiction.

Even if, however, the Court has subject-matter jurisdiction, Barot's claims still should be dismissed with prejudice because, as discussed just below, they are (among other things) conclusively time-barred. *See Firestone v. Firestone*, 76 F.3d 1205, 1208-1209 (D.C. Cir. 1996) (dismissal with prejudice is warranted where trial court determines that amendment would be futile); *Peart v. Latham & Watkins LLP*, 2013 U.S. Dist. LEXIS 152115, at *10 (D.D.C. Oct. 23, 2013) (dismissal with prejudice is proper where "the face of the complaint conclusively shows the claim is time-barred.").

### C.     Barot's Complaint Fails to State a Claim Upon Which Relief May Be Granted And Accordingly Should Be Dismissed Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and

plain statement of the claim showing that the pleader is entitled to relief." This standard has

evolved to require a complaint to "contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations and

citations omitted). A claim is facially plausible when "the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has

acted unlawfully." *Id.* Although all well-pled factual allegations are accepted as true, a court

need not accept as true conclusory allegations or conclusions of law. *Id.* "[A] formulaic

recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citations

omitted).

### 1. Barot's Claims Should Be Dismissed As Untimely

#### a. Barot's Title VII and ADEA Claims Were Filed In This Court Outside of the 90-Day Time Limit

Barot's Title VII and ADEA claims must be dismissed as untimely because the Notice of

Right to Sue (Ex. A) was issued and mailed on December 21, 2012, and Barot filed her

Complaint 109 days, not 90 days, thereafter.

Although, in this portion of the motion under Rule 12(b)(6), all allegations of fact are

accepted as true, this Court also may consider any documents incorporated in the Complaint

(including those referred to in the Complaint and which are central to Plaintiff's claim), matters

of which the Court may take judicial notice, and matters of public record. *See EEOC v. St.

Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (on motion to dismiss, court

may consider documents attached to or incorporated in the complaint); *Berry v. Coastal Int'l

Sec., Inc.*, 2013 U.S. Dist. LEXIS 129563, at 3 n.1 (D.D.C. Sept. 11, 2013) (considering an

agreement because it is "referred to in the complaint and is therefore incorporated by reference"). This standard includes documents incorporated by reference in the complaint and documents upon which a complaint necessarily relies, even if the documents are placed in the record by the defendant in a motion to dismiss. *See Dyson v. D.C.*, 808 F. Supp. 2d 84, 88 n.3 (D.D.C. 2011) (noting propriety, on motion to dismiss, of considering "EEOC. . .documents," including notice of right to sue, because the documents were incorporated by reference and integral to the plaintiff's discrimination claims); *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (may consider documents submitted by defendant in motion to dismiss if complaint necessarily relies on them). Because, in this case, Barot referred to the Notice of Right to Sue in her Complaint (Dkt. 1 at 2)[5] and it is integral to her claims, the Notice is incorporated therein and may be considered by this Court at this time.

Once a plaintiff receives an EEOC right-to-sue notice, she must sue in federal court within 90 days or else her complaint will be barred as untimely. *See Koch v. White*, 2013 U.S. Dist. LEXIS 128769, at *12 (D.D.C. Sept. 10, 2013) (90-day rule "functions like a statute of limitations") (internal quotations and citations omitted); *Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 298 (D.D.C. 2013) (same). "When no evidence of the date of receipt has been provided, the Court 'must determine a presumptive date of receipt.'" *Mack*, 923 F. Supp. 2d at 298 (internal citation omitted). Generally, courts will "presume that the right-to-sue notice is received either three or five days after it is issued." *Koch*, 2013 U.S. Dist. LEXIS 128769, at *12.

In this case, there is neither evidence in the record nor an allegation of the date of receipt.

---

[5]Specifically, Barot alleges that EEOC "has issued a Notice of Suit Rights allowing plaintiff to sue the defendant accordingly and within 90 days of receipt of the Right to Sue, a time-frame within which this law suit has been filed." (Dkt. 1 at 2).

The Court therefore should apply the typical three-day or more generous five-day presumption. The Right to Sue Letter was issued on December 21, 2012 (Ex. A). Assuming the more generous five day presumption, Barot is deemed to have received the letter on Wednesday, December 26, 2012. Barot therefore was required to file suit by Tuesday, March 26, 2013. She did not, however, file suit until April 9, 2013. She is several days out of time, and the Title VII and ADEA claims must therefore be dismissed. *See Koch*, 2013 U.S. Dist. LEXIS 128769, at *13 (dismissing discrimination claims filed after 90-day deadline as untimely).

### b. Barot's EPA Claim Is Barred By The Two-Year Statute of Limitations

Barot's EPA claim also must be dismissed based on the applicable statute of limitations.

The EPA requires a claim to be brought within two years of the violation, or within three years for willful violations. *See* 29 U.S.C. §255(a). *See also Hawley v. Blackboard, Inc.*, 2005 U.S. Dist. LEXIS 3865, at *31 n.3 (D.D.C. Mar. 3, 2005). In this case, Barot alleges that she suffered violations at the latest on September 10, 2009. She does not allege that those violations were willful. She therefore was required to file her EPA claim no later than September 10, 2011. She filed her Complaint, however, on April 9, 2013. And, even assuming she had pled that the EPA violations were willful – which she did not – the deadline for filing her claim would have been September 10, 2012, and so she still would be untimely.

For these reasons, her EPA claims are time-barred and accordingly should be dismissed. We add that Barot's Complaint wholly fails to allege – other than in a conclusory way – that she was paid less for doing equal work as other similarly situated male employees.

### 2. Barot Fails To Allege that the Embassy Is A Covered Employer Under Title VII and the ADEA

Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . .," 42 U.S.C. §2000e(b), and the ADEA similarly defines an employer as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . ." 29 U.S.C. §630(b).

Barot's Complaint should be dismissed because it contains *zero* factual allegations that the Embassy qualifies as a covered employer under these definitions. Specifically, Barot fails to allege that the Embassy is an "industry affecting commerce" and that it employed the requisite number of persons in the relevant years. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006) ("threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief"); *St. Francis Xavier*, 117 F.3d at 624 (failure to allege sufficient number of employees under a federal discrimination statute "would be fatal to the. . .claim on the merits" and is subject to Rule 12(b)(6)). *See also Kitterlin v. N. Am. Canoe Tours, Inc.*, 2012 U.S. Dist. LEXIS 83350, at *2-4 (M.D. Fla. June 15, 2012) (dismissing complaint that alleged conclusorily that defendant was "an employer covered by and within the meaning of Title VII" under Rule 12(b)(6)).

### 3.    Barot Fails to Allege That She Exhausted Her Administrative Remedies with Regard to Her Title VII and ADEA Claims

Prior to filing a Title VII or ADEA lawsuit, plaintiff must exhaust administrative remedies by filing a timely EEOC charge outlining the allegations. *See Johnson v. Interstate Mgmt Co. LLC*, 2013 U.S. Dist. LEXIS 121414, at *14 (D.D.C. Aug. 27, 2013) ("If a plaintiff does not timely exhaust his administrative remedies[,] his claim is subject to dismissal under Rule 12(b)(6)") (internal quotations and citations omitted); *Burkes v. Holder*, 2013 U.S. Dist.

LEXIS 98181, at *8 (D.D.C. July 15, 2013) (timely exhaustion is required). A Title VII and

ADEA lawsuit following an EEOC charge is limited in scope to claims reasonably related to

allegations of the charge. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995);

*Johnson,* 2013 U.S. Dist. LEXIS 121414, at *15.

In her Complaint, Barot nowhere alleges when she filed her Notice of Charge with the

EEOC. Accordingly, she fails to state that she exhausted her administrative remedies in a timely

manner. *See Dyson*, 808 F. Supp. 2d at 88 n.4 ("The fact that the EEOC issued a right to sue

letter does not change the fact that plaintiff filed after the statute of limitations has passed.").

Further, she does not allege that her EEOC Notice of Charge included allegations of age,

sex-based, and national origin discrimination. Accordingly, her claims should be dismissed for

failure to allege exhaustion of administrative remedies. *See Johnson,* 2013 U.S. Dist. LEXIS

121414, at *18-21 (reviewing EEOC notice of charge and determining certain claims were not

raised, hence they were dismissed for failure to exhaust administrative remedies).

**D.     Barot's Jury Demand and Request for Punitive Damages Should Be Stricken**

Finally, we move to strike Barot's jury demand and request for punitive damages as

improper under the FSIA.

The FSIA provides for jurisdiction over "nonjury civil action[s]" in which foreign states

are not immune. 28 U.S.C. §1330(a). Hence, based on the plain language of the statute, jury

trials are not permitted against foreign states. *See Ruggiero v. Compania Peruana de Vapores*,

639 F.2d 872, 875 (2d Cir. 1981). *See also Great Socialist People's Libyan Arab Jamahiriya v.

Miski*, 683 F. Supp. 2d 1, 10 n.5 (D.D.C. 2010) (collecting cases and finding jury trial not

permitted against foreign state on defendant's counterclaim). "The sensible practice" in

26

situations where, as here, the plaintiff has demanded a jury, "is simply to strike the jury demand." *Id.* (internal citations and quotation marks omitted). *See also Hijazi v. Perm. Mission of Saudi Arabia to the U.N.*, 689 F. Supp. 2d 669, 671 (S.D.N.Y. 2010) (striking jury demand from complaint against Saudi Arabia diplomatic mission).

The FSIA also precludes an award of punitive damages in this case. Title 28 U.S.C. § 1606 provides in relevant part that "a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages[.]" *See also Gates v. Syrian Arab Republic*, 646 F.3d 1, 2-3 (D.C. Cir. 2011) (noting that foreign states are exempted from liability for punitive damages except in terrorism cases brought against state sponsors of terrorism under 28 U.S.C. §1605A). Having established *supra* that the Embassy is to be treated as one and the same as the foreign state itself, it cannot be liable for punitive damages in this discrimination case. *See Hijazi,* 689 F. Supp. 2d at 671 (striking punitive damages claim from complaint against Saudi Arabia diplomatic mission).

V.      **Conclusion**

For all the foregoing reasons, we ask that Barot's Complaint be dismissed and to grant

such other relief as may be appropriate under the circumstances.

Dated:  November 5, 2013                    Respectfully submitted,

                                            /s/ Laina Lopez

                                            Laina C. W. Lopez
                                            D.C. Bar No. 477412
                                            BERLINER, CORCORAN & ROWE LLP
                                            1101 Seventeenth St. NW
                                            Suite 1100
                                            Washington, D.C. 20036
                                            Tel: (202) 293-5555
                                            Fax: (202) 293-9035
                                            lcl@bcr-dc.com