UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DOLORES BAROT | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-451 (ABJ) |
| | ) | |
| THE EMBASSY OF THE REPUBLIC OF ZAMBIA | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Dolores Barot brought this action against the Embassy of the Republic of Zambia alleging that when defendant terminated her employment, it discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). Compl. [Dkt. # 1] at 4. Plaintiff later amended her complaint to include an allegation that defendant also violated the District of Columbia Wage Payment and Collection Law, D.C. Code § 32-1301, *et seq.* ("DCWPCL"), when it failed to pay her wages she was owed after her termination. 1st Am. Compl. [Dkt. # 17-1] ¶¶ 63–65; 2d Am. Compl. [Dkt. # 60] ¶¶ 87–90. In its answer, defendant asserted statute of limitations as an affirmative defense to the wage claim. Am. Answer [Dkt. # 63] ¶ 94.

Plaintiff has moved for partial summary judgment on the DCWPCL claim (Count IV), arguing that defendant owes her wages and that her claim is timely. Mot. for Partial Summ. J. [Dkt. # 75] ("Pl.'s Mot."); Mem. in Supp. of Pl.'s Mot. [Dkt. # 75-2] ("Pl.'s Mem."). Defendant filed a cross-motion for partial summary judgment, contending that plaintiff's claim is time-barred and that no equitable remedy tolls the three-year statute of limitations. Def.'s Cross-Mot. for

Partial Summ. J. [Dkt. # 78] ("Def.'s Cross-Mot."); Def.'s Mem. in Opp. to Pl.'s Mot. & in Supp. of Def.'s Cross-Mot. [Dkt. # 77] ("Def.'s Cross-Mem.").

The Court finds that plaintiff's DCWPCL claim is time-barred, and it will grant summary judgment on Count IV in favor of defendant. Defendant's other pending motion for summary judgment on Counts I, II, and III remains under advisement, and it will be addressed in a separate opinion.

## BACKGROUND

### I. Factual Background

The following facts are undisputed unless otherwise noted.[1]

- Plaintiff began working for defendant as a secretary in **January 1998**. Pl.'s SOF ¶¶ 1, 6; Def.'s SOF ¶¶ 1, 6.

- Over time, she took on duties she described as "accounting" duties, Ex. A to Def.'s Cross-Mot. [Dkt. # 77-2] ("Barot Dep.") at 314:17–317:12, and she requested an increase in her salary to reflect those additional duties on **September 8, 2009**. 2d Am. Compl. ¶ 37.

- On **September 10, 2009**, defendant placed plaintiff on administrative leave, during which she was paid fifty-percent of her regular salary. Pl.'s SOF ¶ 21; Def.'s SOF ¶ 21.

- In a letter dated **November 5, 2009**, defendant informed plaintiff that she had "been terminated with effect from **31st October 2009**," and that she would be "paid one month's salary in lieu of notice." See Pl.'s SOF ¶¶ 5, 26; Def.'s SOF ¶¶ 5, 26.

---

1   Pursuant to Local Civil Rule 7(h), plaintiff submitted her statement of undisputed material facts in support of her motion for summary judgment. Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. [Dkt. # 75-1] ("Pl.'s SOF"). Defendant filed a responsive statement of genuinely disputed material facts that included a statement of undisputed material facts in support of its cross-motion for summary judgment. Def.'s Statement of Genuinely Disputed Material Facts in Opp. to Pl.'s Mot. & Statement of Undisputed Material Facts in Supp. of Def.'s Cross-Mot. [Dkt. # 77-1] ("Def.'s SOF"). Plaintiff filed a responsive statement of material facts in dispute. Pl.'s Resp. to Def.'s SOF. [Dkt. # 81-1] ("Pl.'s Resp. SOF"). When a fact is not disputed, the Court will cite to the parties' statements of facts; if a fact is disputed, the Court will cite to evidence in the record.

2

- Notwithstanding the date of the letter, defendant mailed it to plaintiff on **November 23, 2009**, Pl.'s SOF ¶ 27; Def.'s SOF ¶ 27; *see* Ex. 11 to Pl.'s Mot. [Dkt. # 75-4] ("Ex. 11"), and she received it the next day, on **November 24, 2009**. Ex. L to Def.'s Cross-Mot. [Dkt. # 77-2] ("Ex. L").

- Defendant notified the United States Department of State that it had terminated plaintiff with a "termination date" of **November 30, 2009**. Ex. 12 to Pl.'s Mot. [Dkt. # 75-4] ("Ex. 12").

- On **November 30, 2009**, Frank Mbewe – defendant's First Secretary of Accounts, to whom plaintiff reported – submitted a request to Minister Counselor Alfred Chioza for approval of "final payments" to be made to plaintiff. Pl.'s SOF ¶¶ 7, 16, 29; Def.'s SOF ¶¶ 7, 16, 29; Ex. 13 to Pl.'s Mot. [Dkt. #75-4].

- On **December 2, 2009**, plaintiff sent a letter to defendant requesting full payment of the money she believed she was owed and stating that she had consulted with an attorney. Ex. L.

- Mr. Chioza approved the final payment amounts in Mr. Mbewe's letter on **December 4, 2009**. Def.'s SOF ¶ 32; Pl.'s Resp. SOF ¶ 32.

- Plaintiff requested payment again on **December 4, 2009**. Pl.'s SOF ¶ 30; Def.'s SOF ¶ 30; Ex. 14 to Pl.'s Mot. [Dkt. # 75-4] ("Ex. 14").

- On **December 7, 2009**, plaintiff received $6,155.00 from defendant. Pl.'s SOF ¶ 32; Def.'s SOF ¶ 32.[2] That same day, plaintiff informed Mr. Mbewe that she believed she had been underpaid. Def.'s SOF ¶ 32; Pl.'s Resp. SOF ¶ 32.

- On **December 9, 2009**, plaintiff sent a letter to Mr. Chioza, reiterating that she had been underpaid. Pl.'s SOF ¶ 33; Def.'s SOF ¶ 33; Ex. 15 to Pl.'s Mot. [Dkt. # 75-4].

- On **December 15, 2009**, Mr. Mbewe emailed plaintiff a calculation of "Final Payments of Leave Days and Salary in Lieu of Notice." Def.'s SOF ¶ 34; Pl.'s Resp. SOF ¶ 34; Ex. FF to Def.'s Cross-Mot. [Dkt. # 77-3] ("Ex. FF"). He stated that the computations would be submitted to Mr. Chioza as "final," and that "the case can be declared as closed thereafter" unless plaintiff had any other objections. Def.'s SOF ¶ 34; Pl.'s Resp. SOF ¶ 34; Ex. FF.

---

2   Defendant asserts that this check was dated November 30, 2009, and that "Barot's husband picked up the check from the Embassy on December 7, 2009." Def.'s SOF ¶ 32. But defendant fails to point to evidence in the record supporting this fact.

3

- The next day, **December 16, 2009**, plaintiff responded to Mr. Mbewe, confirming that she did "not dispute this at all." Ex. GG to Def.'s Cross-Mot. [Dkt. # 77-3].[3]

- Notwithstanding this exchange, plaintiff states that Mr. Mbewe informed her on **December 23, 2009**, that First Secretary of Political and Administration, Chembo Felix Mbula, would be reviewing her underpayment claim. Pl.'s SOF ¶ 34; Decl. of Dolores Barot, Ex. 4 to Pl.'s Mot. [Dkt. # 75-4] ("Barot Decl.") ¶ 17.

- Thereafter, on **January 10** and **January 24, 2010**, plaintiff contacted Mr. Mbula to request that she be paid the money she believed she was owed. Pl.'s SOF ¶ 35; Def.'s SOF ¶ 35; Ex. 16 to Pl.'s Mot. [Dkt. # 75-4]; Ex. 17 to Pl.'s Mot. [Dkt. # 75-4].

- On **February 1, 2010**, plaintiff received $1,155.00 from defendant. Pl.'s SOF ¶ 36; Def.'s SOF ¶ 36.[4]

- Plaintiff continued to communicate with individuals at the Embassy between February and April 2010 in an effort to resolve her claim that she was still owed money. Pl.'s SOF ¶ 40; Def.'s SOF ¶ 40.

- On **March 22, 2010**, Mr. Mbewe emailed plaintiff and asked her to come to the Embassy "so that [they] [could] put this matter to rest." Ex. AA to Def.'s Cross-Mot. [Dkt. # 77-3] ("Ex. AA").

- Plaintiff responded the same day, **March 22, 2010**, saying that she could not come into the Embassy because she was "traumatized with what [they] had done to [her]." *Id.*

- On **April 21, 2010**, plaintiff contacted defendant again to request payment, and she informed defendant that she intended to pursue legal remedies if it did not pay her the money she believed she was owed. Pl.'s SOF ¶ 41; Def.'s SOF ¶ 41; Ex. 18 to Pl.'s Mot. [Dkt. # 75-4].

- Then, in a letter dated **April 28, 2010**, defendant notified plaintiff that it had actually overpaid her by $2,150, and it demanded repayment. Pl.'s SOF ¶ 42; Def.'s SOF ¶ 42; Ex. 19 to Pl.'s Mot. [Dkt. # 75-4].

---

3   Plaintiff does not dispute the existence of this communication, but claims that when she made this statement, "she was referring to the computation she and Mr. Mbewe discussed by phone, not a total amount of $4,120.00." Pl.'s Resp. SOF ¶ 34.

4   The record supports defendant's assertion that the check for $1,155.00 was dated January 27, 2010, Ex. I to Def.'s Cross-Mot. [Dkt. # 77-2], and that the Embassy advised plaintiff by email on January 29, 2010, that she could pick up the check that day or the next business day, February 1, 2010. Ex. HH to Def.'s Cross-Mot. [Dkt. # 77-3] ("Ex. HH").

- Plaintiff acknowledged receipt of this letter on **April 30, 2010**. Ex. 20 to Pl.'s Mot. [Dkt. # 75-4].

- There is no evidence in the record that the parties engaged in any further conversations about the wage issue or that either party made any payments to the other after April 30, 2010.

II.   **Procedural Background**

On March 18, 2013,[5] plaintiff filed her initial complaint, alleging violations of Title VII and the ADEA. Compl. Plaintiff did not explicitly mention the DCWPCL or assert a claim under it until she filed her first amended complaint on November 22, 2013.[6] Pl.'s SOF ¶ 46; Def.'s SOF ¶ 46; 1st Am. Compl. ¶¶ 63–65.

---

5   Defendant insists that plaintiff did not file her original complaint until April 9, 2013, which is the date reflected on the docket. Def.'s Cross-Mem. at 12. Plaintiff's complaint was received by the clerk's office on March 18, 2013, and was accompanied by her *in forma pauperis* application, [Dkt. # 2], which was granted on April 9, 2013. Fiat Order (April 9, 2013). The D.C. Circuit has stated that "[r]eceipt by the clerk's office of a *pro se* complaint accompanied by an *in forma pauperis* application constitutes a filing for statutory time limitation purposes." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1058 n.2 (D.C. Cir. 1988) (MacKinnon, J., concurring). However, the parties dispute whether plaintiff filed her complaint *pro se*. Def.'s Cross-Mem. at 21; Pl.'s Mem. at 15–16. Plaintiff's complaint is signed by an attorney, *see* Compl. at 5, but plaintiff testified that she had obtained counsel on a pro bono basis and that the attorney helped her draft her complaint. *See* Barot Dep. at 279:17–281:15. Moreover, plaintiff's civil cover sheet states that she was proceeding *pro se*. Civil Cover Sheet [Dkt. # 1-1]. In any event, the date on which plaintiff filed her initial complaint does not affect the outcome of this case because plaintiff's claim is time-barred using either date.

6   Although there is a question of whether the DCWPCL claim relates back to the original complaint under Federal Rule of Civil Procedure 15(c)(1)(B), the Court need not resolve the issue because plaintiff's claim would be time-barred whether the Court used March 18 (complaint received by Clerk's office), April 9 (complaint docketed), or November 22, 2013 (complaint amended) as the filing date. The Court notes that in her original complaint, plaintiff alleged that "[d]efendant did not timely pay [her] dismissal pay, as required under the employment contract or practices," Compl. at 3, and as long as the facts in the original complaint put the defendant on notice "of the basis for liability the plaintiff[] would later advance in the amended complaint," the complaint will relate back. *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008), citing *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).

5

On April 11, 2014, the Court dismissed plaintiff's amended complaint for lack of personal jurisdiction based on plaintiff's failure to perfect service on defendant in accordance with the Foreign Sovereign Immunities Act ("FSIA"). *Barot v. Embassy of the Republic of Zambia*, 11 F. Supp. 3d 24 (D.D.C. 2014). The Court denied plaintiff's motion for reconsideration on June 2, 2014. *Barot v. Embassy of the Republic of Zambia*, 11 F. Supp. 3d 33 (D.D.C. 2014). Plaintiff appealed the dismissal of her amended complaint, and the Court of Appeals reversed and remanded the case to "afford [plaintiff] . . . the opportunity to effect service pursuant to 28 U.S.C § 1608(a)(3)." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 29–30 (D.C. Cir. 2015); *see also* Mandate of United States Court of Appeals [Dkt. # 41].

After plaintiff perfected service, *see* Return of Service Aff. [Dkt. # 52], defendant moved to dismiss the amended complaint on the grounds that it failed to state a claim upon which relief could be granted. Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss [Dkt. # 53-1]. In response, plaintiff filed a motion for leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15, Mot. for Leave to File 2d Am. Compl. [Dkt. # 54], which the Court granted. Min. Order (Jan. 19, 2016).

Plaintiff filed a second amended complaint on January 19, 2016. 2d Am. Compl. [Dkt. # 60]. On February 12, 2016, defendant filed an answer, which included a counterclaim for trespass to chattel against plaintiff. Answer [Dkt. # 62]. Defendant voluntarily dismissed the counterclaim on February 26, 2016, Notice of Voluntary Dismissal [Dkt. # 64] after filing an amended answer on February 25, 2016. Am. Answer [Dkt. # 63].

Following discovery, plaintiff moved for partial summary judgment on her DCWPCL claim, Pl.'s Mot., and defendant filed a cross-motion for summary judgment on the same count.

Def.'s Cross-Mot. The motion has been fully briefed.[7] Defendant also filed a motion for summary judgment on Counts I, II, and III on March 9, 2017. Def.'s Mot. for Summ. J. on Counts I, II, and III [Dkt. # 80]. That motion is also fully briefed, but this opinion deals only with Count IV.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment

---

7   Plaintiff filed her reply in support of her summary judgment motion and in opposition to defendant's cross motion on March 17, 2017. Reply in Supp. of Pl.'s Mot. & Opp. to Def.'s Cross-Mot. [Dkt. # 81] ("Pl.'s Reply"). On March 24, 2017, defendant filed its cross-reply. Def.'s Reply to Pl.'s Reply [Dkt. # 82] ("Def.'s Cross-Reply"). In response to defendant's cross-reply, plaintiff filed a sur-reply on April 10, 2017. Sur-Reply [Dkt. # 85] ("Pl.'s Sur-Reply").

motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (alteration in original), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

## ANALYSIS

**I.  The Court will grant defendant's partial motion for summary judgment because plaintiff did not file her claim within the three-year statute of limitations period.**

The DCWPCL provides that "[w]henever an employer discharges an employee, the employer shall pay the employee's wages earned not later than the working day following such discharge." D.C. Code § 32-1303(1). Claims under the DCWPCL must be commenced "within 3 years after the cause of action accrued, or of the last occurrence if the violation is continuous" to avoid being time-barred. D.C. Code § 32-1308(c)(1). "Where the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001), quoting *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) (en banc).

Here, plaintiff alleges that defendant violated the DCWPCL by failing to pay her owed wages within one business day of her termination. 2d Am. Compl. ¶ 88. The parties dispute the date of plaintiff's termination and therefore, the date that her claim accrued. *See Dover v. Medstar Wash. Hosp. Ctr., Inc.*, 989 F. Supp. 2d 57, 61 (D.D.C. 2013) (observing that claims under the

DCWPCL accrue on the date plaintiff was terminated). According to defendant, plaintiff was "terminated from employment either October 31 or (at the latest) November 24, 2009," when she received the termination letter. Def.'s SOF ¶ 28. Plaintiff points to November 30, 2009, as the operative date. Pl.'s SOF ¶ 28. Regardless of which termination date the Court uses, plaintiff's claim is still time-barred.

Defendant sent a letter to plaintiff dated November 5, 2009, stating that plaintiff had been terminated effective October 31, 2009. Ex. 10 to Pl.'s Mot. [Dkt # 75-4]. But this letter was mailed to plaintiff on November 23, 2009, Ex. 11, she received it on November 24, 2009, Ex. L; *see also* Pl.'s Mem. at 10, and when defendant notified the United States Department of State that plaintiff had been terminated, it specified a "termination date" of November 30, 2009. Ex. 12.

Pursuant to the DCWPCL, defendant was obligated to pay plaintiff her owed wages the first business day after her termination. *See* D.C. Code § 32-1303(1). While defendant contends that the check representing plaintiff's final payment was dated November 30, 2009, it has only produced evidence that shows that the computations for plaintiff's final payments were submitted for approval on that date. *See* Ex. Q to Def.'s Cross-Mot. [Dkt. # 77-3]. And the parties do not dispute that the final payment of $6,115.00 was not approved until December 4, 2009, Def.'s SOF ¶ 32; Pl.'s Resp. SOF ¶ 32, and that plaintiff did not get the check until December 7, 2009. Pl.'s SOF ¶ 32; Def.'s SOF ¶ 32. Further, the record reveals that plaintiff contacted defendant on December 2 and 4, 2009, to demand payment. Pl.'s SOF ¶ 30; Def.'s SOF ¶ 30; Ex. L; Ex. 14.

Therefore, using either of the two possible termination dates in the record – October 31, 2009 or November 30, 2009 – the record reflects that plaintiff was not paid by the next business day – November 2, 2009 or December 1, 2009 – as required by the applicable statute. Therefore, her claim had to be filed within three years of December 1, 2009 at the latest, and there is no

question that plaintiff did not file her D.C. wage claim until after December 1, 2012. Plaintiff did not initiate this action until March 18, 2013, and she did not add the DWCPCL claim until November 22, 2013. So even if the claim relates back to the earliest possible filing date of this lawsuit, it would be outside of the three-year statute of limitations.

Plaintiff also argues that her claim accrued later because defendant violated the DCWPCL for a second time on April 28, 2010, when it demanded repayment of money it maintained had been sent to plaintiff in error. Pl.'s Mem. at 7. She contends that this demand for repayment constituted a "condition" on the previously paid wages which would violate D.C. Code § 32-1304:

> In case of a bona fide dispute concerning the amount of wages due, the employer shall give written notice to the employee of the amount of wages which he concedes to be due and shall pay such amount without condition, within the time required by . . . [section] 32-1303.

*Id.*

However, this section of the D.C. Code was designed for the benefit of employers. It is a statutory exemption "that allows employers to refuse to pay disputed wages and still remain in compliance with the Act." *Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 28–29 (D.D.C. 2004). And here, defendant has not sought to invoke the use of this exemption, which "is essentially an affirmative defense." *Rotherberg v. Xerox Corp.*, No. 12-617, 2013 WL 12084543, at *6 (D.D.C. Jan. 4, 2013); *see* Def.'s Cross-Mem. at 16–17. There is no evidence that defendant provided plaintiff with "written notice . . . of the amount of wages which [it] concedes to be due," or paid plaintiff those "conceded" wages within one business day of her termination as required by section 32-1303. *Rothberg*, 2013 WL 12084543, at *5, quoting D.C. Code § 32-1304. So the provision has no bearing on the date plaintiff was required to sue.

Because plaintiff failed to bring her claim within three years of the date upon which her claim accrued, her DCWPCL claim is time-barred. Plaintiff urges the Court to apply equitable

10

doctrines that would make her claim timely, Pl.'s Mem. at 4–5, but these arguments are unpersuasive.

**II.     The discovery rule does not apply and cannot extend the statute of limitations because plaintiff's injury was readily apparent.**

Although a cause of action generally accrues at the time injury occurs, District of Columbia courts apply the "discovery rule" to determine when the statute of limitations commences in cases "where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs." *Bussineau v. President and Dirs. of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986), citing *Stager v. Schneider*, 494 A.2d 1307, 1316 (D.C. 1985).

Plaintiff contends that she did not discover defendant's wrongdoing until defendant demanded repayment from her on April 28, 2010, and therefore, the discovery rule dictates that her cause of action did not accrue until then. Pl.'s Mem. at 10–11. But the discovery rule does not apply in this case because plaintiff's injury could have been – and was – known at the time of her termination. *See Mullin*, 785 A.2d at 298, quoting *Colbert*, 641 A.2d at 472.

Plaintiff had notice of her termination by at least November 24, 2009, and she expressed her opinion that she had not been paid her final wages as required by statute in writing on December 2 and 4, 2009. Defendant's allegedly wrongful conduct was not hidden or "obscure," and indeed, one of plaintiff's letters announced that she had already consulted with an attorney. Ex. L; *Nelson v. Am. Nat'l Red Cross*, 26 F.3d 193, 198 (D.C. Cir. 1994) (holding that the discovery rule did not delay plaintiff's cause of action from accruing because, in part, plaintiff had "discussed consulting counsel" at the time the injury occurred). Therefore, the discovery rule is inapplicable to plaintiff's claim and does not operate to extend the statute of limitations period.

### III. Defendant is not equitably estopped from asserting a statute of limitations defense because it did not lull plaintiff into inaction.

Plaintiff also seeks to invoke the doctrine of equitable estoppel, arguing that defendant "attempted to lull her" into delaying filing this action. Pl.'s Mem. at 11–12. The District of Columbia recognizes this "limited exception" to the "generally strict" application of statutes of limitations:

> Under the lulling doctrine, a defendant cannot assert the bar of the statute of limitations, if it appears the defendant has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run.

*East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 156–57 (D.C. 1998) (internal quotation marks omitted).

For this doctrine to apply under D.C. law, "[t]he defendant must have done something that amounted to an affirmative inducement to plaintiff[] to delay bringing action." *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986), quoting *Hornblower v. George Wash. Univ.*, 31 App. D.C. 64, 75 (1908); *see also Jones v. Gov't Emps. Ins. Co.*, 621 A.2d 845, 847 (D.C. 1993) ("[T]o show a 'lulling,' concrete evidence must be presented that clearly establishes that such activity occurred."), citing *Bailey*, 516 A.2d at 940. If there is no evidence of any affirmative inducement, then whether the statute of limitations has expired is decided as a matter of law. *See Jones*, 621 A.2d at 847 (affirming grant of summary judgment in favor of defendant after concluding that plaintiff did not put forward sufficient facts to establish lulling).

Plaintiff contends that the date for the filing of her DCWPCL claim was tolled until April 30, 2010, because defendant lulled her into inaction by waiting until then to inform her that in its view, she had been overpaid. Pl.'s Mem. at 11–12. To support her position, plaintiff refers to her own testimony that Mr. Mbewe told her that she was "going to get paid all of [her] wages owed to [her]" in regular communications between December 2009 and April 2010. Barot Dep., Ex. 23 to

12

Pl.'s Reply [Dkt. # 81-2] at 297:7–298:7; 298:21–300:1. Therefore, pointing to the March 18, 2013, date that she filed her complaint – and assuming that the November amendment to the complaint relates back – she maintains that she timely filed her DCWPCL claim within the three-year statute of limitations. Pl.'s Mem. at 12.

But these sorts of general statements, if they were made, would not amount to the affirmative inducement required, and when plaintiff's testimony is considered in connection with the documentary evidence that contradicts it, the Court cannot find that plaintiff has come forward with the "concrete evidence" required to clearly establish a need for equitable relief. *See Jones*, 621 A.2d at 847, citing *Bailey*, 516 A.2d at 940.

First, Mr. Mbewe – the individual who plaintiff claims promised that she would be paid her owed wages – sent plaintiff a letter on December 15, 2009, stating that the computations were "final" and that her case was "closed." Ex. FF. Second, plaintiff herself continuously referred to the December 7, 2009, payment and computations as "final" in correspondence with defendant between December 2009 and January 2010. *See* Ex. S to Def.'s Cross-Mot. [Dkt. # 77-3]; Ex. R to Def.'s Cross-Mot. [Dkt. # 77-3]; Ex. T. to Def.'s Cross-Mot. [Dkt. # 77-3]; Ex. U to Def.'s Cross-Mot. [Dkt. # 77-3]; Ex. V. to Def.'s Cross-Mot. [Dkt. # 77-3]; Ex. W to Def.'s Cross-Mot. [Dkt # 77-3]. Then, when defendant made an additional payment in February, the check for $1,155.00 was accompanied by a document detailing defendant's calculations and bearing the title "Final Payments of Leave Days and Salary in Lieu of Notice." Ex. 2 to Pl.'s Mot. [Dkt. # 75-4]. Just over a month later, on March 10, 2010, plaintiff wrote an email to Mr. Chioza in which she stated that she would "never accept [defendant's] explanation about [her] final entitlement." Ex. Z to Def.'s Cross-Mot. [Dkt. # 77-3] ("Ex. Z"). And finally, on March 22, 2010, Mr. Mbewe

emailed plaintiff and asked her to come to the Embassy in order to compare their computations in order to "put this matter to rest." Ex. AA.

It does appear that plaintiff and defendant were working together to resolve her grievance, and that defendant continued to review and revise its numbers in response to plaintiff's persistent demands. But that is not the same thing as taking affirmative steps to lull someone into sitting on her rights. Plaintiff asserted that she had consulted with an attorney as early as December 2, 2009, and she continued to threaten to invoke her legal remedies throughout her correspondence with defendant. *See, e.g.*, Ex. HH ("I will be forced to bring this matter to the proper authorities if after ten (10) days from this date (January 24, 2010) and [sic] I haven't heard from you."); *see also Johnson v. District of Columbia*, 572 F. Supp. 2d 94, 103 (D.D.C. 2008) (holding that plaintiff's retention of attorney indicated that he was not lulled into inaction). And, the notion that she had been lulled into a belief that the grievance would be resolved in her favor is belied by her statement on March 10, 2010, that she would "never accept" defendant's calculations. *See* Ex. Z. So, plaintiff has failed to produce evidence of affirmatively misleading conduct that would warrant the use of equitable estoppel to toll the statute of limitations.

**IV.   The limitations period will also not be tolled under the doctrine of equitable tolling.**

Equitable tolling is distinct from equitable estoppel in its focus on the circumstances of the plaintiff rather than the conduct of the defendant. But both doctrines "operate, in a practical sense, to toll a limitations period." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998). Equitable tolling "allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence

of his claim." *Currier*, 159 F.3d at 1367, citing *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998).

The District of Columbia "does not recognize an equitable tolling exception to the statute of limitations," *Johnson v. Marcheta Inv'rs Ltd. P'ship*, 711 A.2d 109, 112 (D.C. 1998), so courts are hesitant to apply the doctrine. *Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996) ("Rejection of the application of equitable tolling on a case-by-case basis . . . rests on the belief that where the legislature has provided no savings statute, courts would exceed their prescribed role by providing a remedy where the legislature has determined that none should lie."); *Huang v. D'Albora*, 644 A.2d 1, 3 (D.C. 1994) (refusing to adopt equitable tolling because courts "have previously refused to do [so] in regard to general statutes of limitations"), citing *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C. 1966). When equitable tolling does apply, it "does not extend the statute of limitations indefinitely"; "[p]laintiff is required to bring suit within a reasonable time after she obtains, or by due diligence could obtain, the information necessary to pursue the claim." *East*, 718 A.2d at 161.

Plaintiff insists that granting her the benefit of equitable tolling would be warranted here because she was "persistent in her efforts to obtain full payment for wages that were due upon her termination" but that "she was not privy to whether and what amount [d]efendant would pay until she received the April 28, 2010 letter from [d]efendant." Pl.'s Mem. at 13. But, plaintiff was told on several occasions that she had received defendant's final accounting, and she objected to defendant's calculations at that time. Even if she still held out some hope of a better resolution based on alleged statements by Mr. Mbewe, by her own account, she received the "vital information" that defendant would pay her no more and that it was demanding money back from her on April 30, 2010. *Id.* She still had more than two years from that point until the statute of

limitations ran out in December of 2012, which was a reasonable time in which she could have filed suit. *See East*, 718 A.2d at 161. Therefore, this is not one of the rare situations when this Court should apply the doctrine of equitable tolling.

**CONLCUSION**

Because plaintiff did not file her DCWPCL claim within the three-year statutory period, and her equitable arguments are unpersuasive, the Court will grant defendant's motion for partial summary judgment on Count IV. Therefore, plaintiff's motion for partial summary judgment will be denied.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 8, 2017